UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TAMRON JAMES, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:22-cv-441 |
| | ) |
| v. | ) |
| | ) |
| DELTA MOTORS, LLC AND | ) |
| AUSTIN'S AUTO SERVICE, LLC, | ) By:  Michael F. Urbanski |
| | )        Chief United States District Judge |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

This matter comes before the court on plaintiff Tamron James's Motion for Default Judgment as to both Delta Motors LLC ("Delta") and Austin's Auto Service LLC ("Austin's"), ECF No. 12. Delta is a motor vehicle dealer and Austin's is an affiliated automotive repair shop. Compl., ECF No. 2, at ¶¶ 3–6. James entered an installment purchase contract for a used van on October 31, 2021. Id. at ¶¶ 7–11. Among other irregularities with the contract and financing paperwork, James alleges that defendants have prevented her from obtaining title to the vehicle despite paying it off in full in March 2022. Id. at ¶¶ 26–28, 40. James seeks relief under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; Uniform Commercial Code ("UCC") Warranty of Title, incorporated into Virginia law at Va. Code § 8.2-312; the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-200, and Virginia usury law, Va. Code § 6.2-311A. On March 15, 2023, at James's request, the court held a hearing under Federal Rule of Civil Procedure 55(b)(2) "because this complaint alleges multiple claims with

potentially overlapping actual damages and various standards for statutory damages and attorney fee award[s]." Br. Supp. Default, ECF No. 16, at 3.

For the foregoing reasons, the court **GRANTS** plaintiff's motion for entry of judgment by default, Mot. for Default, ECF No. 12, and enters judgment in the following amounts: actual damages of $5,268.98, stemming from TILA, UCC, and VCPA violations; statutory damages of $13,492.96 stemming from TILA, VCPA, and Virginia usury law violations; and attorney fees of $9,336.00 stemming from TILA, VCPA, and Virginia usury law violations.

## I. Background

The events giving rise to the complaint begin on October 30, 2021, when James purchased a 2001 Dodge Caravan from defendants. Compl., ECF No. 2, at ¶¶ 7–11. She paid $1,000 as a down payment, id. at ¶ 10, on the base price of $4,600, Compl. Ex., ECF No. 2-2, at 1, 8.

James signed several documents pertaining to the same vehicle, including a Buyer's Order, a Retail Installment Sales Contract ("RISC"), and a Contract for Sale. Compl., ECF No. 2, at ¶¶ 10–15. Inaccuracies in, and contradictions between, these documents are at the root of James's complaint. All three documents incorrectly state that James's down payment was $800 instead of $1,000. id. at ¶¶ 13; Compl. Ex., ECF No. 2-2, at 3. The documents also list different sellers—Delta on the Buyer's Order and RISC, Austin's on the Contract for Sale—and state differing terms regarding security interests and consequences of late payments. Compl., ECF No. 2, at ¶¶ 10–15.

When James purchased the car, she received temporary dealer license tags and registration valid through November 2021. Id. at ¶ 18. From November 2021 through

2

February 2022, James repeatedly requested that Delta transfer the title to her so that she could properly license, register, insure, and drive the vehicle. Id. at ¶¶ 19–22. In February 2022, she received title to the car from Austin's, which showed a lien to Austin's instead of Delta, contradicting the paperwork. Id. at ¶ 24. After paying off the car in March 2022, James attempted to procure a new title from the Department of Motor Vehicles ("DMV"). Id. at ¶ 30. The DMV found the contradictory Buyer's Order, RISC, and Contract for Sale too confusing and denied her request. Id. at ¶ 31.

After seeking help from defendants, James received a letter from Keith Brandenburg, an individual purporting to be a corporate officer of both companies, that remedied some of the DMV's concerns. Id. at ¶¶ 33–35. James returned to the DMV seeking a new title but was again denied, this time because the DMV was not sure whether defendants were the same entity. Id. at ¶ 36; Compl. Ex., ECF No. 2-2, at 13. If they were not the same entity, the DMV representative stated that they would need a Bill of Sale and Buyer's Order from Austin's, not Delta. Compl. Ex., ECF No. 2-2, at 13. James alleges that Austin's is not licensed as a motor vehicle dealer and therefore may not sell vehicles directly to the public. Compl., ECF No. 2, at ¶ 17.

James informed Delta of the DMV's response but received no further help from Delta or Austin's. Id. at ¶ 40. She has not been able to acquire title to the vehicle. Id. In July 2022, James sent Brandenburg a letter from her counsel revoking acceptance of the van for breach of warranty of title and identifying other claims, and demanding return of payments made. Defendants declined to return her payments. Id. at ¶ 42.

James filed suit on August 2, 2022, and both defendants were properly served. See Delta Summons, ECF No. 6; Austin's Summons, ECF No. 7. Service was delivered to United States Corporation Agents, Inc., the registered agent for both defendants at the time of initial service of process. ECF No. 6; ECF No. 7. When neither defendant responded, plaintiff moved for entry of default on October 17, 2022, ECF No. 9, and the clerk entered default on October 28, 2022, ECF No. 10. Notice of the clerk's entry of default was again delivered to United States Corporation Agents, Inc. While Delta was notified of the clerk's entry of default at this time, the registered agent returned the clerk's entry of default as undeliverable as to Austin's, stating that they were no longer Austin's registered agent. ECF No. 11. Keith Brandenburg, the new registered agent for Austin's, received the clerk's entry of default on January 30, 2023. ECF No. 18.

## II. Jurisdiction and Venue

The court has both subject-matter jurisdiction over James's claims and personal jurisdiction over the defendants. The court has subject-matter jurisdiction because James brought this action pursuant to TILA, a federal statute. The court therefore has federal question jurisdiction under 28 U.S.C. § 1331. The court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

The court has personal jurisdiction over both Delta and Austin's, as they are both Virginia limited liability companies transacting business in Roanoke, Virginia. Compl., ECF No. 2, at ¶¶ 3–4. Venue is appropriate, as the events giving rise to the complaint took place in the Western District of Virginia.

## III. Legal Standard

Federal Rules of Civil Procedure 55 "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). The Federal Rules create a two-step process for entry of default judgment. First, the non-defaulting party must move for entry of default under Rule 55(a). See Fed. R. Civ. P. 55(a). "The Clerk of the Court's interlocutory entry of default pursuant to Federal Rule of Civil Procedure 55(a) provides notice to the defaulting party prior to the entry of default judgment by the court." Hummel v. Hall, 868 F. Supp. 2d 543, 547 (W.D. Va. 2012) (citing Carbon Fuel Co. v. USX Corp., 1998 WL 480809, at *2 (4th Cir. Aug. 6, 1998)). Once default has been entered, the non-defaulting party may then move for entry of default judgment under Rule 55(b). Id. "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . ." Fed. R. Civ. P. 55(b)(1). However, "[i]n circumstances where the sum is not certain or where there is evidence to suggest that the defendant was incompetent or an infant, Rule 55(b)(2) applies, requiring that default can only be [made] by a court." Agri-Supply Co., Inc. v. Agrisupply.Com, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006).

"Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint," J & J Sports Prods., Inc. v. Romenski, 845 F. Supp. 2d 703, 706 (W.D.N.C. 2012), but not any such "allegations as to damages." S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005); Fed. R. Civ. P. 8(b)(6). Therefore, "to determine whether to enter judgment on a defendant's default, the court examines whether

5

the well-pleaded allegations in the complaint support the relief sought in the case." Old Dominion Freight Line, Inc. v. Slabway, LLC, No. 1:22CV164, 2023 WL 2503310, at *1 (M.D.N.C. Mar. 13, 2023) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). The pleadings must contain a "sufficient basis" for the judgment entered. Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). If there is a sufficient basis for the judgment, then the court "must make an independent determination regarding damages," Lawbaugh, 359 F. Supp. 2d at 422, "relying on affidavits or documentary evidence in the record," Old Dominion Freight Line, Inc. v. Slabway, LLC, No. 1:22CV164, 2023 WL 2503310, at *1 (M.D.N.C. Mar. 13, 2023).

## IV. Liability

The court has examined James's well-pleaded allegations in the Complaint and determined that there is sufficient basis to support the relief requested. Therefore, for the reasons below, the court determines that liability has been established for all four causes of action.

### A. Truth in Lending Act (TILA)

James has plead facts sufficient to establish liability under TILA. TILA's stated purpose is:

> [T]o assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a). To achieve this purpose, TILA "requires creditors who engage in closed-end consumer credit transactions to disclose a long list of items." Hummel v. Hall, 868 F.

6

Supp. 2d 543, 548–49 (W.D. Va. 2012) (citing 15 U.S.C. § 1638(a)). For purposes of TILA, a "creditor" is:

> [A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). A "credit sale" is "any sale in which the seller is a creditor." 15 U.S.C. § 1602(h).

James alleges that both Delta and Austin's regularly extend or offer credit for which a finance charge is or may be imposed and that is payable in more than four installments. Compl., ECF No. 2, at ¶¶ 44, 47. She alleges that both defendants provided paperwork related to the October 30, 2021, purchase of the van on credit—for example, Delta provided a Retail Installment Sales Contract (RISC), Compl. Ex., ECF No. 2-2, at 3, and Austin's provided a sales contract that included a monthly payment and amortization schedule, id. at 8. James alleges that Delta's RISC violated TILA's disclosure requirements by incorrectly stating the down payment, violating 15 U.S.C. § 1638(a)(8), the amount financed, violating § 1638(a)(2)(A), the finance charge, violating § 1638(a)(3), the total of payments, violating § 1638(a)(5), the total sale price, violating § 1638(a)(7), and the annual percentage rate, violating § 1638(a)(4). Compl., ECF No. 2, at ¶ 45.[1] James alleges that Austin's Contract for Sale violated

---

[1] The figures for the Total Sale Price and Total of Payments were erroneously swapped in the RISC. ECF No. 2-2, at 3. Correcting for this transposition, the (still-inaccurate) figures as stated on the RISC are as follows: an APR of 18%, a finance charge of $608.52, an amount financed of $3,800, a total of payments of $4,408.52, a down payment of $800, and a total sale price of $4,408.52. As noted, James's down payment was $1,000, not $800. Correcting this error leads to a

7

TILA by failing to make any of the mandatory disclosures in the required terminology. Id. at ¶ 48. Deeming James's allegations as admitted, James has established Delta's and Austin's liability on Claim One.[2] Rodriguez v. Auto Sales, Inc., 477 F. Supp. 2d 477, 479–80 (D. Conn. 2007) (holding that, in the default judgment context, plaintiff established TILA liability by alleging that the defendant was a creditor who regularly extended consumer credit, to whom plaintiff was indebted, and that defendant failed to comply with specific disclosure requirements).

## B. Uniform Commercial Code (UCC)

James has also established her claim for relief under the UCC. James alleges that she had a "contract for sale" of the van, Compl., ECF No. 2, at ¶ 49, which brings the transaction within the protection provided by § 2-312 of the UCC, codified at Virginia Code § 8.2-312. In the absence of a specific disclaimer, this provision provides that a contract for sale includes a warranty that the title conveyed is good and that the goods are "free of any security interest or lien or encumbrance of which the buyer at the time of contracting has no knowledge." Va. Code § 8.2-312. James alleges that no such specific disclaimer is present in the sales documents with either Delta or Austin's. Compl., ECF No. 2, at ¶ 50. James further alleges that she has been unable to obtain title to the van even after paying it off in full because the documents provided by the defendants to James were inadequate to transfer title. Id. at ¶¶ 27, 31, 36, 40.

---

cascade of changes across the RISC. The base price for the van was $4,600. ECF No. 2-2, at 1. Since James paid $1,000 down, the amount financed should have been the $3,600 remainder. The total of payments remained constant at $4,408.52. The correct finance charge is the difference between the total of payments and the amount financed, or $808.52. The actual APR was therefore 29.69%. Br. in Supp. of Default, ECF No. 16, at 23.

[2] James also alleges that Austin's is liable for Delta's TILA failures, since Delta was acting as its agent. ECF No. 2, at 8. Because the allegations are sufficient to support independent TILA liability against Austin's, the court neither considers nor decides the legal sufficiency of this argument.

8

Based on these allegations, James has established her breach of warranty of title claim. See Silvey v. Johnston, 193 Va. 677, 680–81, 70 S.E.2d 280, 281–82 (1952) (holding that an automobile buyer had a claim for breach of warranty of title when the seller provided an incorrect vehicle identification number and the buyer was unable to obtain good title).

This breach permitted James to revoke her acceptance of the vehicle under Va. Code § 8.2-608. Because defendants did not pass on good title to James, the van was a non-conforming commercial unit whose nonconformity has "not been seasonably cured." Va. Code § 8.2-608. The value of the vehicle has been substantially impaired by this nonconformity, as James has been unable to "properly license, register, insure, and drive the vehicle." Compl., ECF No. 2, at ¶ 20. James alleges that she attempted to revoke acceptance, "to no avail." Br. Supp. Default, ECF No. 16, at 6. The record reflects that she did so within a "reasonable time" from when she discovered that the defendants were unlikely to ever provide her with good title to the van. Compl., ECF No. 2, at ¶ 41.

### C. Virginia Consumer Protection Act (VCPA)

The VCPA prohibits "fraudulent acts and practices" related to consumer transactions. Va. Code § 59.1-200. James alleges that the defendants were "suppliers" and the sale of the van was a "consumer transaction" for purposes of the VCPA, Compl., ECF No. 2, at ¶¶ 55–56, and that their actions constituted numerous VCPA violations, id. at ¶¶ 57–58. While most of James's alleged VCPA violations fail as a matter of law, at least one supports a finding of liability.

The VCPA does not apply to "those aspects of a consumer transaction which are regulated by the Federal Consumer Credit Protection Act" ("FCCPA"), Va. Code § 59.1-

199(C), of which TILA forms part. Therefore, James "may not premise VCPA liability on conduct concerning the terms and circumstances of defendant's extension of credit to her." Hodges v. Koons Buick Pontiac GMC, Inc., 180 F. Supp. 2d 786, 794 (E.D. Va. 2001); see also Blanchette v. Toll Bros., 48 Va. Cir. 386, at *2 (1999) (applying the VCPA to misrepresentations regarding the goods or services provided by defendants, noting that plaintiffs "d[id] not base their cause of action on any aspect of the transaction related to financing or consumer credit").[3]

The alleged violations that fall within TILA's reach are therefore inadequate bases for VCPA relief. For example, James's allegation that Delta and Austin's "retain[ed] $200 of [her] down payment without crediting it to the contract" or alternatively "claim[ed] that $200 as processing fee without disclosing it in the buyers order," id. at ¶¶ 57(a), 58(a), falls within TILA's disclosure requirements related to the down payment and total sale price under 15 U.S.C. § 1638(a). Similarly, James's allegations that Delta "misrepresent[ed] the identity of the entity who would be holding a security interest reflected on the title of the vehicle," id. at ¶ 57(c), and "require[ed]" James's "signature on two separate contracts of sale for the same vehicle," id. at ¶ 57(d), and that Austin's "contract[ed] for and charg[ed]" prohibited "late

---

[3] Other courts have held that the VCPA "does not apply to any aspect of a transaction . . . regulated by the Federal Consumer Credit Protection Act." Smith v. U.S. Credit Corp., 626 F. Supp. 102, 103 (E.D. Va. 1985) (emphasis added), aff'd sub nom. Smith v. Anderson, 801 F.2d 661 (4th Cir. 1986); see also Graham v. RRR, LLC, 202 F. Supp. 2d 483, 490 (E.D. Va. 2002) (holding that the plaintiff's VCPA claim related to financing a vehicle was preempted because it "arises from the same nucleus of facts as his TILA counts"), aff'd sub nom. Graham v. Geneva Enterprises, Inc., 55 F. App'x 135 (4th Cir. 2003) (per curiam); Martinez Garcia v. Mega Auto Outlet, No. 1:20-CV-945 (LO/TCB), 2021 WL 1015816, at *6 (E.D. Va. Feb. 23, 2021), report and recommendation adopted, No. 1:20-CV-0945, 2021 WL 982630 (E.D. Va. Mar. 16, 2021). This court, however, believes that the interpretation endorsed by Hodges, 180 F. Supp. 2d at 794, correctly applies the statutory exclusion only to "those aspects of a consumer transaction" regulated by TILA. Va. Code § 59.1-199(C) (emphasis added). See also Nazar v. Balderson, 104 Va. Cir. 173, at *2 (2020); Reed v. Litton Loan Servicing LP, 64 Va. Cir. 447, at *1 (2004) (overruling demurrer because "the VCPA is only pre-empted in those specific 'aspects' regulated by" the FCCPA and permitting claim that the loan servicer violated the VCPA by charging unauthorized fees).

fees," id. at ¶ 58(d), and "impos[ed] or [sought] to impose" an unauthorized lien on the vehicle "in the name of Austin's," id. at ¶ 58(e), are all so closely linked to the consumer credit transaction that recovery is unavailable under the VCPA.

While the VCPA must be construed "liberally, in favor of the injured party," Ballagh v. Fauber Enters., Inc., 290 Va. 120, 773 S.E.2d 366, 368 (2015), the plaintiff is still "'required to state with particularity the circumstances constituting fraud or mistake,'" including "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Wynn's Extended Care, Inc. v. Bradley, 619 F. App'x 216, 220 (4th Cir. 2015) (unpublished) (per curiam) (quoting Weidman v. Exxon Mobil Corp., 776 F.3d 214, 219 (4th Cir.2015)). The heightened Rule 9(b) pleading standard applies even in the default judgment context. See Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (holding that the lower court erred in awarding default judgment on a fraud claim not plead with particularity); Glaser v. Hagen, No. 114CV1726LMBIDD, 2016 WL 521454, at *2 (E.D. Va. Feb. 5, 2016) (applying the Rule 9(b) standard to fraud claims when determining default judgment award).

James alleges that Delta and Austin's violated the VCPA by "selling the van while then having in possession no title in the name of either Delta or Austin's." Compl., ECF No. 2, at ¶¶ 57(b), 58(e).[4] According to the allegations before the court, the defendants omitted the

---

[4] James alleges that this act violated Va. Code § 46.2-1508 and, therefore, the VCPA. However, this code provision does not provide individual purchasers with a cause of action. "Title 46.2, Chapter 15 of the Virginia Code establishes a comprehensive scheme of administrative remedies under the auspices of the Motor Vehicle Dealer Board." Hodges v. Koons Buick Pontiac GMC, Inc., 180 F. Supp. 2d 786, 795 (E.D. Va. 2001). Violation of Va. Code § 46.2-1508 is a Class 1 misdemeanor and can be the basis for injunctive relief—but such relief must be sought either by the Virginia Motor Vehicle Dealer Board or by a licensed motor vehicle dealer, not by an individual purchaser like James. Va. Code §§ 46.2-1508(B), (C). Nor is violation of Va. Code § 46.2-1508 a per se violation of the VCPA. Therefore, the court considers the allegation without regard for whether the alleged acts and omissions also violated § 46.2-1508.

11

material fact that they did not own the vehicle at the time they advertised it and sold it to James.

Here, James has plead sufficient time, place, and identity. In <u>Scott v. GMAC Mortgage, LLC</u>, 3:10CV00024, 2010 WL 3340518 (W.D. Va. Aug. 25, 2010), the court, relying on the decision in <u>Nahigian v. Juno Loudoun, LLC</u>, 684 F.Supp.2d 731 (E.D. Va. 2010), found that the plaintiffs had plead their case with sufficient particularity to satisfy Rule 9(b) and to allow the defendant to raise a defense. <u>Scott</u>, 2010 WL 3340518, at *3. The court held that it was not necessary to name the specific representative of the defendant that made the misrepresentations, nor the precise location, date, and hour at which defendant allegedly made the misrepresentations. <u>Id.</u> Instead, it was sufficient to merely identify the defendant corporate entity and provide general allegations of when and where the misrepresentations were made. As in <u>Scott</u> and <u>Nahigian,</u> James has identified the defendant entities (Delta and Austin's), the general time when the material omission took place (the purchase date of October 31, 2021, Compl., ECF No. 2, at ¶ 7), and the general location (Delta's lot in Roanoke, <u>id.</u> at ¶ 6). James also reasonably relied upon the understanding created by this omission: that the entities with which she met owned the vehicle they offered and sold to her. <u>Brown v. Transurban USA, Inc.</u>, 144 F. Supp. 3d 809, 845–46 (E.D. Va. 2015) (holding that plaintiffs met the reliance prong of the particularity pleading standard by making payments based on the misrepresentation). Therefore, James has met the pleading requirements under Rule 9(b) and established her VCPA claim for relief.

### D. Usury

James's final allegation is that Delta and Austin's charged usuriously high interest on this transaction. ECF No 2, at ¶¶ 61–70.

Virginia's usury laws provide that the maximum permissible annual rate of interest is 12%, unless a loan falls into a specific exception. Va. Code § 6.2-303(A). An exception exists for a closed-end installment loan such as this, permitting a finance charge "at such rate or rates as the seller and the purchaser have agreed." Va. Code § 6.2-311(A). Upon such an agreement, "[n]o additional finance charge shall be made." Id. In the absence of an agreed upon rate, the implied rate of interest is 6%. Va. Code § 6.2-301.

James claims that Delta violated usury laws by charging interest far beyond the agreed-upon amount. Id. at ¶ 62. As documented by the RISC, James and Delta agreed upon a finance charge of $608.52 and an APR of 18% over the life of the loan. Compl. Ex. ECF No. 2-2, at 3. When the RISC is corrected to reflect the reality of the transaction—including the missing $200 as part of the down payment—the finance charge rises to $808.52, reflecting an APR of 29.69%, far above the 18% rate to which James agreed.[5] Id., Br. Supp. Default, ECF No. 16, at 23.

James claims Austin's also violated Virginia's usury laws by charging interest above the 12% rate permitted by law. Compl., ECF No. 2, at ¶ 65–67. The Contract for Sale with Austin's includes an amortization table with the amount of interest due with each payment but does not disclose any agreed-upon interest rate. Compl. Ex., ECF No. 2-2, at 7–8. Even if the court interpreted the Austin's agreement as incorporating the interest rate disclosed by Delta, the

---

[5] See supra note 1 for the calculation of these corrected figures.

13

actual 29.69% APR exceeds either the agreed-upon 18% or the 12% statutory maximum in the absence of an agreement.

James has therefore established her usury claims against both Delta and Austin's.

## V. Damages

Delta and Austin's are jointly and severally liable for the damages described below. Joint and several liability is appropriate in this case given the Delta and Austin's overlapping contracts, payments, and conduct in selling the same van to James.

### A. Actual Damages

James is entitled to actual damages under TILA, the UCC, VCPA and Virginia usury law. While recovery under each claim is discussed in detail below, the court caps James's actual damages at the total she paid for the car, $5,268.98.

Under TILA, 15 U.S.C. § 1640(a)(1), James may recover her actual damages of $200 for the portion of her initial payment that was omitted from all paperwork. All of James's filings and bank records are consistent – she originally paid $1,000, but Delta's RISC and Austin's Contract for Sale record $800 as the down payment and failed to account for the additional $200 anywhere else. Compl., ECF No. 2, at ¶ 13; Compl. Ex., ECF No. 2-2, at 1, 3, 8; James Decl., ECF No. 13, at 5; Br. Supp. Default, ECF No. 16, at 6.

As for James's UCC claim, James justifiably revoked acceptance of the contract under Va. Code § 8.2-608. Therefore, James may recover "so much of the price that has been paid." Va. Code § 8.2-711. Here, the sum of James's payments is $5,268.98.[6] James Decl., ECF No.

---

[6] James's complaint initially stated a slightly higher total payment amount—$5,408.52—but subsequently revised the number downward. The revised total—$5,268.98—is supported by James's declaration and attached receipts and bank statements. James Decl., ECF No. 13.

14

13; Br. Supp. Default, ECF No. 16, at 7. Accordingly, James is awarded this sum. However, because this award is based on revocation of acceptance, James must "surrender the vehicle and existing title documents and complete such documentation, at the expense of the defendants, as may be necessary to confirm the ownership of the vehicle in the defendants." Compl., ECF No. 2, at ¶ 54.

Under the VCPA, James is entitled to actual damages in the amount of $5,268.98. Va. Code. § 59.1-204(A).

Virginia's usury law permits James to recover the total amount of interest paid in excess of that permitted by statute. Va. Code § 6.2-305(A)(1). Since the court caps actual damages at James's total payments of $5,268.98, an amount already provided for under TILA, UCC, and VCPA claims, the court need not calculate the precise amount of excess interest charged.

### B. Statutory Damages

James may also recover $13,492.96 in statutory damages under TILA, VCPA, and Virginia usury laws.

A creditor who violates TILA's disclosure requirements is liable to the borrower for "twice the amount of any finance charge in connection with the transaction." 15 U.S.C. § 1640(a)(2)(A)(i). James alleges that the actual finance charge applied to the credit sale was $808.52, Compl., ECF No. 2, at ¶ 45(c), not $608.52 as stated in Delta's RISC, Compl. Ex., ECF No. 2-2, at 3. See In re Williams, 330 B.R. 534, 539 (Bankr. M.D. La. 2005) (holding that calculation of the finance charge and APR under TILA is an "issue of fact"). James may therefore recover $1,617.04—twice $808.52—in statutory damages.

The court may award treble damages for willful VCPA violations. Va Code. § 59.1-204(A); Johnson v. Robert Shields Interiors, Inc., No. 1:15CV820, 2016 WL 2739270, at *9 (E.D. Va. May 11, 2016) (awarding treble damages in the context of a default judgment). Here, in light of the nature of Delta's and Austin's established violation—selling a car to which they had no title—treble damages are appropriate, bringing the VCPA award "to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." Here, as $5,268.98 trebled is $15,806.94, the additional statutory award is $10,537.96.

For Delta and Austin's violation of Virginia's usury laws, James is also awarded statutory damages of twice the total amount of interest paid on this car loan, or $1,337.96.[7] Va. Code § 6.2-305(A)(2); Skinner v. Cen-Pen Corp., 243 Va. 279, 285, 414 S.E.2d 824, 827 (1992) (permitting "recovery of twice the amount of all interest paid, lawful as well as usurious") (emphasis in original) (citing § 6.1-330.46 (former version of § 6.1-305)).

### VI. Attorney Fees

Attorney fees are also warranted under TILA, the VCPA, and Virginia usury laws. A creditor who fails to comply with TILA "is liable" to the borrower for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3); Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 185 (4th Cir. 2007) ("The language is imperative: costs and reasonable fees must be awarded to a plaintiff who brings a successful [TILA] action."). The VCPA provides that successful claimants "may be awarded reasonable attorneys' fees and court costs." Va. Code § 59.1-204(B); Kelley v. Little Charlie's Auto Sales,

---

[7] The total amount of interest paid, $668.98, is obtained by subtracting the base price of the vehicle, $4,600, from the total James paid for the vehicle, $5,268.98.

16

No. 4:04CV00083, 2006 WL 2456355, at *2, *4–5 (W.D. Va. Aug. 22, 2006) (awarding attorney's fees for the portion of work attributable to the VCPA claim). Under Virginia's usury laws, "[t]he person paying may bring an action . . . to recover . . . court costs and reasonable attorney fees." Va. Code § 6.2-305(A)(3); Hummel v. Hall, No. 6:11-CV-00012, 2012 WL 4458450, at *1 (W.D. Va. July 18, 2012) (holding that the plaintiff was "entitled to reasonable attorney's fees" because he had prevailed on his "TILA and Virginia usury law claims").

In this case, James has sought reimbursement for 38.9 hours of attorney's fees at an hourly rate of $300 for a lodestar total of $11,670.00. Counsel for James then suggests discounting this rate by 20% for an attorney fee award of $9,336.00.[8] This figure is supported by an affidavit from counsel, including an itemized time record, Decl. Counsel, ECF No. 14, at 7–8, and an affidavit from Dale Pittman in support of this fee, Pittman Decl., ECF No. 15. Because James has carried her "burden of showing that the claimed rate and number of hours are reasonable," the calculated fee "is presumed to be the reasonable fee." Blum v. Stenson, 465 U.S. 886, 898 (1984).

## VII. Conclusion

For the aforementioned reasons, the court **GRANTS** plaintiff's motion for entry of judgment by default, ECF No. 12, and enters judgment in the following amounts: actual damages of $5,268.98 stemming from TILA, UCC, and VCPA violations; statutory damages of $13,492.96 stemming from TILA, VCPA, and Virginia usury law violations; and attorney

---

[8] James originally sought reimbursement for 39.8 hours. James corrected the amount to exclude time spent on the UCC claim, which does not permit recovery of attorney fees.

fees of $9,336.00 stemming from TILA, VCPA, and Virginia usury law violations. Pursuant to 28 U.S.C. § 1961(a), post-judgment interest will accrue at a rate of 4.72%.

    It is so **ORDERED**.

Entered: May 8, 2023

*[Digitally signed by Michael F. Urbanski, Chief U.S. District Judge. Date: 2023.05.08 10:25:10 -04'00']*

Michael F. Urbanski
Chief United States District Judge